Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| ELISANDRA ORTIZ MENDOZA<br>Recurrida<br><br>v.<br><br>MENNONITE GENERAL HOSPITAL, INC. H/N/C CENTRO MÉDICO MENONITA DE CAYEY; SISTEMA DE SALUD MENONITA; HOSPITAL GENERAL MENONITA CAYEY; HOSPITAL GENERAL MENONITA, INC.; COMPAÑÍA ASEGURADORA ABC<br>Peticionarios | TA2025CE00046 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Civil Núm. CD2023CV00187<br><br>Sobre: Reclamación por Despido Injustificado y Represalias |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 4 de septiembre de 2025.

Comparecen Mennonite General Hospital, Inc. h/n/c Centro Médico Menonita de Cayey, Sistema de Salud Menonita, Hospital General Menonita Cayey, Hospital General menonita, Inc., (en conjunto, Menonita o parte peticionaria), mediante recurso de *certiorari,* solicitando que revoquemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI), el 23 de mayo de 2025. En el contexto de un pleito laboral, instado originalmente bajo el procedimiento sumario provisto por Ley Núm. 2 del 17 de octubre de 1961, según enmendada, conocida como Ley de Procedimiento Sumario de Reclamaciones Laborales (Ley Núm. 2-1961), 32 LPRA sec. 3118 *et seq.,*[1] el foro primario declaró No Ha Lugar la *Solicitud de Sentencia Sumaria* presentada por la parte peticionaria.

---

[1] Resaltamos que la parte peticionaria omitió advertir en su recurso de *certiorari* que, el 5 de septiembre de 2023, el TPI ordenó la conversión del caso sumario establecido en la Ley 2-1961, al proceso ordinario. Véase entrada núm. 14 de SUMAC. Como se sabe, tal conversión es de vital importancia al considerar los términos para presentar el recurso de

Evaluados los asuntos esgrimidos por Menonita, juzgamos que no se justifica nuestra intervención con el curso decisorio elegido por el foro recurrido, por lo que *denegamos* expedir el recurso de *certiorari*.

## I. Resumen del tracto procesal

El 28 de junio de 2023 la Sra. Elisandra Ortíz Mendoza (señora Ortíz Mendoza o parte recurrida) presentó una *Querella* contra Menonita, por despido injustificado, (Ley 80 del 30 de mayo de 1976, según enmendada, conocida como Ley sobre Despidos Injustificados, (Ley 80), 29 LPRA sec. 185a *et seq.),* y por represalias, (Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, conocida como Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial), (Ley 115), 29 LPRA sec. 194 *et seq.*.

En lo particular, alegó que, el día que ocurrieron los eventos que desencadenaron su despido, se le asignó cubrir un puesto que no le correspondía, con labores ajenas a sus funciones, en un área que no le competía. Describió que, en el ejercicio de dichas funciones le correspondió atender un personal de funeraria, para levantar y transportar a un paciente fallecido, que eventualmente resultó que se entregó el equivocado. Adujo que, al momento en que ocurrió tal hecho, Menonita no contaba con protocolos ni procedimientos o guías para el despacho de pacientes fallecidos. Añadió que, a raíz de la referida equivocación, fue entrevistada y prestó testimonio ante sus supervisores y personal del Departamento de Salud de Puerto Rico. Luego de ello, fue despedida de su empleo en represalia y de manera injustificada. En consecuencia, solicitó al Tribunal la concesión de los remedios que disponen las leyes citadas. En la alternativa, propuso que, de la alegada falta que se le atribuyó resultar

---

*certiorari,* y si ostentamos jurisdicción para atender los méritos de los asuntos planteados. *Díaz Santiago v. Pontificia Universidad Católica,* 207 DPR 339 (2021); *Ruiz Camilo v. Trafón Group Inc.,* 200 DPR 254 (2018); *Patino Chirino v. Parador Villa Antonio,* 196 DPR 439 (2016).

cierta, lo cual negaba, el despido como castigo no era proporcional a la omisión cometida.

A raíz de ello, la parte peticionaria presentó *Contestación a la Querella* correspondiente. En esta adujo, que la señora Ortiz Mendoza fue despedida por justa causa, al incumplir con el protocolo de manejo de cadáveres, lo que provocó que una funeraria se llevara un cadáver incorrecto, y que fuera cremado sin autorización de los familiares. Sostuvo que la peticionaria abandonó la morgue del hospital, y dejó al empleado de la funeraria para que identificara el cadáver, sin cotejar ni asegurarse que fuera el correcto. Por consiguiente, sostuvo que la conducta de la parte recurrida equivalía al abandono de la morgue o área de trabajo, lo que es considerado una falta tipo III en las normas de conducta que, como regla general, conllevaba la terminación del empleo. Además, levantó varias defensas afirmativas.

Luego de que fueran atendidos varios asuntos procesales, no pertinentes resaltar aquí, Menonita presentó la *Solicitud de Sentencia Sumaria* que nos concierne. En esta, enumeró treinta y dos hechos, que propuso como incontrovertidos, con alusión a la prueba documental que los sustentaban y de la cual incluyó copia. Entonces, en la discusión de derecho esgrimió que: a la peticionaria se le había asignado el turno de Supervisión General, como lo reconocía la hoja de descripción de deberes y responsabilidades del puesto que esta ocupaba; se le había hecho entrega de la Normas Generales de Conducta y conocía que el Hospital tenía un protocolo de manejo de cadáveres, siendo el Supervisor General el responsable de entregar los cadáveres a las funerarias; no obstante, esta entregó un cadáver equivocado a la funeraria, estando consciente de que había dos cadáveres con el mismo nombre, y admitió bajo juramento que era prudente y razonable haber verificado los apellidos de estos antes de entregarlo; que las referidas Normas Generales identifican esta violación como tipo III, lo que supone en la mayoría de los casos, la terminación del

empleo, por lo que el despido de la peticionaria no fue caprichoso, ni arbitrario, sino que medió justa causa, sin responder a represalias.

Ante lo cual, la peticionaria instó *Oposición a Solicitud de Sentencia Sumaria.* Como parte de su escrito, incluyó una lista de catorce hechos que no estaban en controversia, con alusión de la prueba documental que los sustentaban, e inmediatamente enumeró diez y ocho hechos que, a su juicio, permanecían controvertidos, haciendo referencia a los identificados en la *Moción de sentencia sumaria* instada por Menonita. Entonces, pasó a discutir: las evaluaciones que se habían realizado sobre las ejecutorias de la recurrida, todas excelentes; la recomendación del propio personal patronal tras el incidente, a los efectos de que no fuera despedida (se recomendó suspensión de empleo por dos semanas); el plan de acción surgido del Hospital una vez ocurrido el incidente, en el que se reconoce que dicha institución falló en las medidas existentes al entregar un cadáver; que el denominado protocolo para manejar los cadáveres no establecía pasos a seguir ante tal evento o procedimiento, y nunca fue discutido con la peticionaria, ni se le entregó. En definitiva, que, por un lado, Menonita reconoció la excelencia de la labor de la peticionaria antes del incidente, y, por el otro, tuvo que revisar los procesos de entrega de cadáveres, añadiendo pasos y salvaguardas, reconociendo que el error ocurrido en la entrega del cadáver le era atribuible.

Luego de que las partes replicaran a los escritos aludidos, el TPI emitió la *Resolución* recurrida, denegando la solicitud de sentencia sumaria instada por Menonita. Como parte del contenido de su dictamen, el foro primario enumeró los siguientes hechos incontrovertidos:

1. La señora Ortiz comenzó a trabajar en Menonita el 9 de noviembre de 2004.

2. Por motivo de que solo tenía la licencia provisional de enfermería, y no pasó la reválida de enfermería, la señora Ortiz renunció a su trabajo en el Hospital.

3. Luego de aprobar la reválida de enfermería, el 21 de agosto de 2007, la señora Ortiz comenzó a trabajar nuevamente en el Hospital.

4. El 4 de abril de 2013, la señora Ortiz recibió el Manual de Empleados y las Normas Generales de Conducta del Hospital.

5. El 20 de abril de 2021, la señora Ortiz recibió la descripción de deberes y responsabilidades del puesto de Coordinadora del Programa de Mejoramiento del Desempeño Organizacional.

6. Para el 3 de mayo de 2022 Ortiz ocupaba el puesto de Coordinadora del Programa de Mejoramiento de Desempeño Organizacional.

7. La señora Mercado era la Directora de Enfermería.

8. Tanto la Supervisión General dentro del Departamento de Enfermería como la Coordinadora del Programa de Mejoramiento del Desempeño Organizacional reciben instrucciones del Director(a) de Enfermería.

9. El 3 de mayo de 2022, la señora Ortiz trabajó en turno de Supervisión General en el Hospital.

10. La señora Mercado, por conducto de la señora Sáez, fue quien le instruyó a la señora Ortiz que hiciera un turno de Supervisión General el 3 de mayo de 2022.

11. El 3 de mayo de 2022, la señora Ortiz participó de un evento de entrega de cadáver.

12. El 3 de mayo de 2022, un agente funerario se comunicó con la señora Ortiz para recoger un cadáver del cuarto frío del Hospital.

13. El 3 de mayo de 2022, la señora Ortiz advino en conocimiento de que un representante de la Funeraria Valle de Paz pasaría por el Hospital para recoger el cadáver de Víctor Manuel Malavé.

14. Al momento en que el representante de la Funeraria Valle de Paz fue a recoger el cadáver de Víctor Manuel Malavé en la morgue, había tres cadáveres.

15. De los tres cadáveres que había en la morgue al momento que el representante de la Funeraria Valle de Paz fue a recoger el cadáver de Víctor Manuel Malavé, dos de ellos eran masculinos.

16. Al momento que el representante de la Funeraria Valle de Paz fue a recoger el cadáver de Víctor Manuel Malavé, había dos cadáveres con primer y segundo nombre Víctor Manuel.

17. En la entrega del cadáver en que, la señora Ortiz participó el 3 de mayo de 2022, fue el representante de la Funeraria Valle de Paz quien identificó el cadáver que dicho funcionario retiró del Hospital.

18. En la entrega del cadáver en que la señora Ortiz participó el 3 de mayo de 2022, ella confió en que el representante de la Funeraria Valle de Paz identificó correctamente el cadáver que retiró del Hospital.

19. El 4 de mayo de 2022, Jarinet Ramos llamó a la señora Ortiz y le informó que, el 3 de mayo de 2022, entregó el cadáver equivocado y que el cadáver entregado incorrectamente había sido cremado.

20. El 6 de mayo de 2022, la señora Ortiz se reunió con funcionarios del Departamento de Salud en relación a la entrega del cadáver incorrecto a una funeraria.

21. El 5 de julio de 2022, la señora Ortiz fue despedida de su empleo.

A renglón seguido, el mismo foro primario plasmó los hechos que considceró permanecían en controversia:

1. Las instrucciones y/o adiestramiento, si alguno, que le brindaron a la señora Ortiz para ejercer la posición de Supervisora General en alguna ocasión.

2. Instrucciones, si algunas, que le hubiesen dado, a la señora Ortiz el 3 de mayo de 2022, con el propósito de que pudiese ejercer las funciones de Supervisora General.

3. Instrucciones, si algunas, que le hubiesen dado a Ortiz el 3 de mayo de 2022, con relación a los cadáveres que se encontraban en la morgue en ese momento.

4. El proceso de identificación de los cadáveres que se encontraban en la morgue el 3 de mayo de 2022, previo al recogido.

5. El proceso de corroboración del cadáver que llevó a cabo el empleado de la funeraria.

6. Medidas de Menonita, específicamente, dirigidas al proceso de recogido/entrega de cadáveres en la morgue, si algunas.

7. De existir, fecha en que dichas medidas fueron aprobadas e implementadas.

8. Proceso de investigación realizado por Menonita, el cual culminó con el despido de la señora Ortiz.

9. Proceso de investigación realizado por el Departamento de Salud y su resultado.

10. Relación, si alguna, del tratamiento psicológico recibido por la señora Ortiz y el evento en controversia.

En desacuerdo con la denegatoria de su moción dispositiva, Menonita acude ante nosotros, mediante recurso de *certiorari,* señalando los siguientes errores:

Primer señalamiento de error: Erró el Honorable Tribunal de Primera Instancia al no desestimar la causa de acción sobre despido injustificado bajo la ley 80 basado en unos hechos encontrados como controvertidos que no son materiales a la causa de acción.

B. Segundo señalamiento de error: En la alternativa, erró el Tribunal de Primera Instancia al no determinar c[ó]mo hechos incontrovertidos[,] hechos para los cuales Menonita presentó prueba robusta, basada en testimonio bajo juramento de la Recurrida y/o documentos, y que la Recurrida no controvirtió con prueba de igual peso.

C. Tercer señalamiento de error: erró el Honorable Tribunal de Primera Instancia al no desestimar la causa de acción sobre despido por represalias bajo la ley 115 dado a que, de los hechos incontrovertidos se desprende que la querellante fue despedida por el incidente de entrega de un cadáver equivocado a una funeraria y no por una razón discriminatoria.

Por su parte, la recurrida presentó su *Oposición a recurso de Certiorari.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II. Exposición de Derecho

a.

El auto de *certiorari* permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 728 (2016). La expedición del auto descansa en la sana discreción del tribunal, y encuentra su característica distintiva, precisamente, en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012). Sin embargo, la discreción judicial no es irrestricta y ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece, en lo pertinente, que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de Procedimiento Civil; (2) **la denegatoria de una moción de carácter dispositivo** y; (3) por vía de excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios evidenciarios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia. (Énfasis provisto).

En este ejercicio, nuestro máximo foro ha expresado que un tribunal apelativo no intervendrá con las determinaciones interlocutorias

discrecionales procesales de un tribunal sentenciador en ausencia de pasión, perjuicio, parcialidad o error manifiesto. *Argüello v. Argüello,* 155 DPR 62, 78-79 (2001).

b.

Al revisar sentencias provenientes del Tribunal de Primera Instancia dictadas mediante el mecanismo de sentencias sumarias, o una resolución que deniega su aplicación, nuestro Tribunal de Apelaciones se encuentra en la misma posición que el tribunal inferior para evaluar su procedencia. *Meléndez González et al. v. M. Cuebas,* 193 DPR 100,137 (2015). Los criterios a seguir por este foro intermedio al atender la revisión de una sentencia sumaria dictada por el foro primario han sido enumerados con exactitud por nuestro Tribunal Supremo. *Íd.* A tenor, el Tribunal de Apelaciones debe:

1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V*,* y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

Además, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras; (1) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia, (2) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González, et al. v. M. Cuebas,* supra. El primer punto se enfoca en que las partes que recurren a un foro apelativo no pueden litigar asuntos

que no fueron traídos a la atención del foro de instancia. Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlos. *Íd.* en la pág. 115. También, se ha aclarado que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. *Vera v. Bravo*, 161 DPR 308, 335 (2004).

### III.  Aplicación del Derecho a los hechos

a.

Según adelantamos, la Regla 52.1 de Procedimiento Civil, *supra*, nos habilita para intervenir con las denegatorias de las mociones de carácter dispositivo provenientes del TPI. En este caso, se solicita nuestra intervención con la *Resolución* donde se denegó la *Solicitud de Sentencia Sumaria* presentada por Menonita. Siendo la moción de sentencia sumaria una de carácter dispositivo, estaríamos en posición de intervenir con el dictamen recurrido.

No obstante, como también advertimos, el quedar habilitados para intervenir no significa que estemos obligados a ello, por cuanto la característica principal del *certiorari* sigue siendo, precisamente, la discrecionalidad que conservamos al determinar su expedición. Tal discreción tampoco cede ante el hecho de que la revisión de la sentencia sumaria a nivel apelativo acontezca *de novo*. En definitiva, este foro intermedio conserva su facultad discrecional sobre la expedición o no de los recursos de *certiorari* que se le presentan.

b.

Dispuesto lo anterior, y visto que la revisión de una denegatoria de sentencia sumaria por este foro intermedio acontece *de novo*, dirigimos nuestra mirada al cumplimiento por las partes de las formalidades que acarrea asumir la presentación de una sentencia sumaria, y su escrito en oposición, según los requisitos dimanantes de la Regla 36.3(a) y (b) de

Procedimiento Civil, 32 LPRA Ap. V. Hecho tal análisis juzgamos que ambas partes cumplieron sustancialmente con los requisitos allí exigidos, de modo que el asunto no nos merece mayor atención.

Entonces, al valorar la prueba documental presentada por Menonita en su moción dispositiva para establecer los hechos que propuso como incontrovertidos, frente a la aportada por la recurrida en su escrito en oposición a sentencia sumaria para controvertirlos, coincidimos con el foro recurrido en su valoración de los hechos enumerados como incontrovertidos, y aquellos en que persisten controversias.

A sustentar su petitorio ante nosotros Menonita pone el acento en que, al momento de recoger el cadáver por la funeraria, había dos cadáveres con el primer y segundo nombre iguales, (Víctor Manuel), según conocía la recurrida, pero fue el representante de la referida funeraria quien lo eligió y retiró, no la recurrida, incumpliendo esta con su deber de entregar el cadáver correcto.

Juzgamos que tal línea argumentativa en buena medida elude o elige minimizar la teoría legal esgrimida por la parte recurrida, de que: Menonita falló en identificar dónde en el mencionado *protocolo* para manejar la entrega de cadáveres se precisaban los pasos a seguir por un empleado al asumir tal tarea; y en qué momento, si alguno, la recurrida fue instruida-adiestrada acerca de dichas funciones.

Opone a ello Menonita que, el adiestramiento e instrucciones impartidas a la recurrida resultan inmateriales en este caso ante la expresión que esta hiciera de que su labor *no fue prudente y razonable,* lo que explica que el despido fuera justificado.

No nos persuade, tal como el foro recurrido, sí juzgamos que hay hechos materiales, según enumerados en la *Resolución* recurrida, que requieren la celebración del juicio en su fondo para adjudicarlos. Y estos precisamente giran en torno a las funciones y responsabilidades asignadas

a la recurrida el día del incidente, que incluyen las instrucciones y adiestramientos previos que se le dieran, si alguno, como los pasos que institucionalmente su hubieran establecido para que los empleados asumieran la responsabilidad del proceso de entrega de cadáveres. **Sin adjudicar** en modo alguno una posible responsabilidad compartida, o si, finalmente, en efecto, se justificaba el despido de la recurrida como primera opción frente a la falta cometida, la sentencia sumaria solo debe ser dictada allí donde los hechos materiales no estén en controversia.

En definitiva, la documentación presentada por las partes en la solicitud de sentencia sumaria y su oposición, no nos resulta suficiente para intervenir con el curso decisorio elegido por el tribunal *a quo*, pues coincidimos con la apreciación de que persisten hechos esenciales en controversia, cuya dilucidación corresponden al juicio plenario. A fin de cuentas, el tribunal procederá a dictar sentencia sumaria *solo cuando esté claramente convencido que la vista evidenciaria es innecesaria. Nissen Holland v. Genthaller*, 172 DPR 503, 511 (2007). Ante la ausencia de prejuicio, pasión, parcialidad o error manifiesto en la *Resolución* recurrida, solo resta denegar el auto solicitado.

**IV. Parte dispositiva**

Por las razones expuesta, *denegamos* expedir el recurso de *certiorari* solicitado.

Lo acordó el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones